IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES REID,                          :    CIVIL ACTION
                                     :    NO. 08-2300
          Plaintiff,                 :
                                     :
          v.                         :
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of the                  :
Social Security                      :
Administration,                      :
                                     :
          Defendant.                 :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          August 28, 2009

          Plaintiff James A. Reid ("Plaintiff") brought this

action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C.

§ 405(g) by reference, seeking judicial review of the

Commissioner of Social Security's final decision denying his

application for Disability Insurance Benefits ("DIB") provided

under Title II of the Social Security Act ("the Act").  Plaintiff

filed a motion for summary judgment, Defendants responded thereto

and the case was referred to United States Magistrate Judge,

Henry S. Perkin for a Report and Recommendation.

          Magistrate Judge Perkin recommended that the relief

sought by Plaintiff be denied and the Commissioner's decision

affirmed.  Following consideration of Plaintiff's objections to

the Report and Recommendation and Defendant's responses thereto,

the Court overrules Plaintiff's objections, approves and adopts

the Report and Recommendation, and denies Plaintiff's motion for

summary judgment.


I.    BACKGROUND

        Plaintiff filed an application for DIB on February 1,
2006, alleging disability beginning on January 1, 2006, due to
inguinal hernia and a mood disorder.  (Tr. 13.)  On May 3, 2006,
this application was denied at the initial review level.  (Tr.
39-43.)  On May 15, 2006, Plaintiff filed a timely request for a
hearing before Administrative Law Judge ("ALJ"), Christine
McCaffery; the hearing was held September 10, 2007.  (Tr. 164-
90.)  Plaintiff was represented by counsel from Community Legal
Services, Inc.[1]  He testified at the hearing, (Tr. 162), as did
William T. Slaven, III, a court appointed vocational expert
("VE").  (Tr. 186-89.)  Following the hearing, at the request of
Plaintiff's counsel, the ALJ allowed the record to remain open
for an additional thirty days, so that Plaintiff could supplement
the record with further evidence.  (Tr. 189-90.)  No additional
evidence was submitted.

        The ALJ denied Plaintiff's application for DIB on
October 17, 2007, finding that Plaintiff was not disabled within
the meaning of the Act.  Specifically, the ALJ found that

---

        [1]     During the hearing before the ALJ, Plaintiff was
represented by John S. Whitelaw, Esquire.  However, the ALJ
incorrectly stated that Plaintiff was represented by Nancy
Cedeno, Esquire.  (Tr. 13.)  Ms. Cedeno is a non-attorney
advocate.  (Pl.'s Br., p. 2.)

Plaintiff was able to perform his past relevant work as a vendor, security guard, packager, janitor, and dishwasher.  (Tr. 10-19.) In addition, the ALJ found that even if Plaintiff was unable to return to his past relevant work, he would still be able to successfully adjust to a significant number of jobs in the national and regional economy.  (Id.)  On December 17, 2007, Plaintiff filed a timely request for review of the ALJ's decision.  (Tr. 6.)  The Appeals Council denied this request on March 14, 2008.  (Tr. 4-5.)

On May 16, 2008, Plaintiff initiated this action, seeking judicial review of the Commissioner's decision, denying Plaintiff's application for DIB.[2]  This Court referred the case to Magistrate Judge Perkin for preparation of a Report and Recommendation.  Judge Perkin recommended that Plaintiff's Request for Relief be denied.  Plaintiff filed three objections to Judge Perkin's Report and Recommendation, which are presently before the Court.

II.  APPLICABLE LAW

This Court undertakes a de novo review of the portions of the Report and Recommendation to which Plaintiff has objected. 28 U.S.C. § 636(b)(1); Cont'l Cas. Co. v. Dominick D'Andrea,

---

[2]     Also on May 16, 2008, Plaintiff filed a Motion to Proceed In Forma Pauperis; the Court granted this motion.

<u>Inc.</u>, 150 F.3d 245, 250 (3d Cir. 1998).  The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

      Decisions of an ALJ should be affirmed if supported by "substantial evidence."  <u>Burns v. Barnhart</u>, 312 F.3d 113, 118 (3d Cir. 2002).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (internal quotations and citation omitted).  "It is less than a preponderance of the evidence but more than a mere scintilla." <u>Jesurum v. Sec'y of Health & Human Servs.</u>, 48 F.3d 114, 117 (3d Cir. 1995) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  If the ALJ's decision is supported by substantial evidence, the Court may not set it aside even if the Court would have decided the factual inquiry differently.  <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted); <u>see also</u> <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005) ("[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder'") (quoting <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992)).

      Because Magistrate Judge Perkin outlined the standards for establishing a disability under the Social Security Act and

summarized the five-step sequential process for evaluating
disability claims, the Court will not duplicate these efforts
here.  (R&R at 3-4); see also Santiago v. Barnhart, 367 F. Supp.
2d 728 (E.D. Pa. 2005) (Robreno, J.) (outlining the standards and
five-step sequential process for evaluating disability claims).


III. DISCUSSION

        Plaintiff objects to the Report and Recommendation,
arguing that the Magistrate Judge committed reversible error by
finding:  (1) the ALJ properly determined that Plaintiff's mental
impairment did not meet the "C" criteria section of 12.04 of the
Mental Listings[3] (Pl.'s Objs. 5); (2) the ALJ evaluated all

---

        [3]    12.04 Affective Disorders defined:

        Characterized by a disturbance of mood, accompanied by
a full or partial manic or depressive syndrome. Mood refers to a
prolonged emotion that colors the whole psychic life; it
generally involves either depression or elation.

        The required level of severity for these disorders is
met when the requirements in both A and B are satisfied, or when
the requirements in C are satisfied.

        C.   Medically documented history of a chronic affective
disorder of at least 2 years' duration that has caused more than
a minimal limitation of ability to do basic work activities, with
symptoms or signs currently attenuated by medication or
psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended
duration; or

2. A residual disease process that has resulted in such marginal
adjustment that even a minimal increase in mental demands or
change in the environment would be predicted to cause the

relevant evidence and did not reject evidence without explanation (Pl.'s Objs. 9); and (3) the hypothetical question posed to the VE was not fundamentally flawed (Pl.'s Objs. 12-13.)  The Court considers and rejects each of Plaintiff's objections ad seriatim.

      1.  "C" Criteria of Section 12.04 of the Mental Listings

      Plaintiff argues that the ALJ did not offer a rationale for her conclusion that Plaintiff did not meet the "C" Criteria of Section 12.04 of the Mental Listings.  Specifically, Plaintiff contends that the ALJ's determination constituted "merely . . . a conclusory statement," without any explanation.  (Pls. Objs. 6.) Citing <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981), Plaintiff notes that "an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests." <u>See also</u> <u>Burnett v. Commissioner</u>, 220 F.3d 112, 119 (3d Cir. 2000) (holding ALJ erred by failure to consider and explain his reasons for discounting pertinent evidence before him in making his residual functional capacity determination).

      In contrast, Defendant contends that ALJ carefully considered the record before her and ultimately concluded that

---

individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).

Plaintiff did not meet the "C" Criteria of Section 12.04 of the Mental Listings.  See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Citing Jones, Defendant argues that the Third Circuit "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Jones, 364 F.3d at 505 (quoting Burnett, 220 F.3d at 120).

Federal regulations provide that the determination of whether a particular medical or psychological condition "meets or equals" the requirements of a listed impairment is a medical judgment, made at the initial and reconsideration levels of administrative review by the Commissioner's designated physicians and consultative medical specialists.  See 20 C.F.R. § 416.926.

Here, as identified in the Report and Recommendation, the ALJ cited substantial medical and non-medical evidence to support the determination that Plaintiff did not meet the "C" Criteria of Section 12.04 of the Mental Listings.  First, John Chiampi, Ph.D., a State Agency Psychologist trained the make the "meets or equals" determination, reviewed Plaintiff's medical history and concluded that the evidence failed to establish the presence of the "C" criteria.  (Tr. 155.)  Although Dr. Chiampi

did identify some deficits in Plaintiff's abilities,[4] he ultimately concluded that Plaintiff retained the ability to work, notwithstanding such impairments.  (Tr. 142-43.)  Second, the ALJ noted that Plaintiff received "virtually no mental health treatment" during the relevant time period in this case.[5]  (Tr. 16, 17-18).  Although Plaintiff voluntarily participated in one drug treatment program and one clinical drug trial during the relevant time period,[6] the sparse evidence of these treatments is insufficient to meet the "C" Criteria of Section 12.04 of the Mental Listings.  (Tr. 108-40; 150-60.)

Third, the ALJ cites numerous examples of non-medical evidence which support the determination that Plaintiff did not

---

[4]    Specifically, Dr. Chiampi found that Plaintiff was moderately limited in his abilities to understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and work in coordination with others without being distracted by them.  (Tr. 141.)

[5]    The relevant time period is Plaintiff's alleged disability onset, beginning on January 1, 2006, through the ALJ's decision, October 17, 2007.

[6]    In January 2006, Plaintiff referred himself to Sobriety Through Out Patient, Inc. ("STOP") for cocaine abuse.  (Tr. 108-40.)  Records of treatment in STOP consist largely of Plaintiff's self-reported symptoms, including addiction, homelessness, mental health issues, and lack of support. (Tr. 132.)  In contrast to Plaintiff's self reported symptoms, STOP affiliated specialists, Leonardo Arevala, M.D., and Ellen Jones, M.H.S., reported on January 31, 2006, and February 1, 2006, that Plaintiff had an "appropriate appearance," was "oriented [times three]," and exhibited "calm motor behavior."  (Tr. 140.)

meet the "C" Criteria.  For example, Plaintiff is actively involved with the Nation of Islam and serves as a special assistant at his church, where by all indications he gets along well with others.  (Tr. 176, 181.)  Plaintiff lives with his mother, with whom he "gets along." (Tr. 168, 177).  Such evidence contradicts a finding that Plaintiff experienced episodes of decompensation, had a tendency to decompensate, or had an inability to function outside of a highly supportive living situation, as required by the "C" criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(c).

Notably, Plaintiff's evidence of his mental limitations is based primarily upon his own testimony.  These statements alone are insufficient and fail to establish whether he meets or medically equals the "C" criteria.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating it is claimant's burden to present medical findings that show his impairment matches or is equal in severity to a listed impairment).

Based upon the above evidence cited by the ALJ, the decision, when read as a whole, demonstrates that the ALJ carefully considered the "C" criteria and found that the criteria were not met.  Accordingly, and consistent with Jones, there is substantial evidence in support of the ALJ's determination that Plaintiff's mental impairment did not meet or equal the "C" criteria.

9

2.    The ALJ's Evaluation of Relevant Evidence

Next, Plaintiff argues that the ALJ failed in her
obligation to evaluate relevant evidence in two ways:  (1)
neglecting to consider work-related limitations found by the
State Agency Psychologist; and (2) improperly discounting
Plaintiff's testimony.  (Pl.'s Objs. 17.)  The Court considers
each argument in turn

a.    Limitations found by the State Agency
      Psychologist

Plaintiff contends that the ALJ rejected, without
explanation, the work limitations found by State Agency
Psychologist, Dr. Chiampi.  Dr. Chiampi found that Plaintiff
suffered from moderate limitations in his ability to: understand
and remember instructions; carry out detailed instructions;
maintain attention and concentration for an extended period;
maintain attendance and be punctual; coordinate with others
without being distracted by them; complete a normal workweek
without interruptions from his psychological symptoms; interact
appropriately with the public; accept instructions and respond
appropriately to criticism; get along with coworkers without
demonstrating behavioral extremes; respond to changes in work
setting; work independently and set realistic goals.  (Tr. 141-
43.)

Defendants clarify that Dr. Chiampi's assessment of
Plaintiff was memorialized on two separate forms, both executed

10

on the same date.  First, the Mental RFC Form (Tr. 141-42),
referenced as "Exhibit 3F," opining that Plaintiff had no more
than moderate limitations in any category of mental work-related
functioning.  Second, the Psychiatric Review Form (Tr. 144-56),
referenced as "Exhibit 4F," concluding that Plaintiff's mental
impairment did not meet or equal the criteria of any listed
impairment, and opining that Plaintiff's impairment "mildly
limited his ability to perform activities of daily living,
moderately limited his ability to maintain social functioning,
moderately limited his ability to maintain concentration,
persistence, or pace."  (Tr. 154.)

        As Plaintiff correctly points out, the ALJ's decision,
does not specifically reference the Mental RFC Form prepared by
Dr. Chiampi by exhibit number, but does specifically reference
the Psychiatric Review Form by exhibit number.  However, as
Defendant highlights, the ALJ sufficiently considered and
discussed Dr. Chiampi's opinions contained in both forms.  <u>See</u>
<u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001) (noting
there is no requirement for the ALJ to discuss or refer to every
piece of evidence in the record, so long as the reviewing court
can discern the basis for the ALJ's decision).  Moreover, the
Psychiatric Review Form and Mental RFC Form contain wholly
consistent findings, as both forms opine that Plaintiff had no
more than moderate limitations in functioning.  (Tr. 141-56.)

Contrary to Plaintiff's contention, the ALJ did not reject Dr. Chiampi's opinion that Plaintiff suffered from "moderate" limitations. Rather, consistent with Dr. Chiampi's conclusions, the ALJ found that these limitations did not rise to the "C" criteria of Listing 12.04. (Tr. 18.) Notably, the ALJ did deviate from Dr. Chiampi's opinion in one respect, but this deviation is both supported by substantial evidence in the record and explained by the ALJ. Specifically, the ALJ disagreed with Dr. Chiampi's conclusion that Plaintiff was moderately limited in social functioning. (Id.) Citing Plaintiff's testimony regarding his ability to get along with others and interact in the church community, the ALJ rejected Dr. Chiampi's opinion. (Id.)

In light of the above evidence, contrary to Plaintiff's assertion, the ALJ articulated sufficient explanation and rationale to support the acceptance and rejection of the challenged portions of Dr. Chiampi's testimony.

b.   Discounting of Plaintiff's testimony

Plaintiff contends that the ALJ characterized Plaintiff's testimony as "partially credible" (Tr. 17), without providing an explanation for this evaluation. Given the importance of Plaintiff's testimony, the ALJ is required to fully explain any rejection of that testimony. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (requiring the Secretary to evaluate

12

all probative evidence).  As previously established, the ALJ is not bound to use any particular format when explaining its position.  See Jones, 364 F.3d at 505.

Credibility determinations as to a claimant's testimony are reserved for the ALJ.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 2003).  Because an ALJ is charged with observing a witness' demeanor, its findings on credibility must be accorded great weight and deference.  Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).

Here, substantial medical and non-medical evidence in the record supports the ALJ's credibility determination.  First, the ALJ notes that the objective medical evidence did not support Plaintiff's allegation of totally debilitating mental limitations.  See 20 C.F.R. § 416.929(c)(2).  As the record demonstrates, Plaintiff submitted very sparse evidence of mental health treatment to support his complaints.  (Tr. 18.)  Moreover, Dr. Chiampi opined that Plaintiff retains the ability to meet the demands of work, notwithstanding his mood disorder.  (Tr. 141-43.)

Second, substantial non-medical evidence belied Plaintiff's self-reported statements and complaints.  Specifically, the record identifies several activities[7] in which

---

[7]     Plaintiff testified that he attends meetings and study groups at least four times a week, speaks in study groups, has gained success from medications with no side effects, volunteered

Plaintiff participates, despite his alleged disability.  The ALJ noted that Plaintiff's ability to partake in these activities conflicts with Plaintiff's testimony concerning the severity of his alleged disabilities.

Under these circumstances, the ALJ's credibility determination was supported by substantial evidence.

### 3.  Vocational Expert's Hypothetical Question

Finally, Plaintiff contends that the hypothetical question posed to the VE was fundamentally flawed because it did not include all of Plaintiff's limitations, and thus, the response to this question cannot constitute substantial evidence. Specifically, Plaintiff argues that although the ALJ found that Plaintiff suffers from mild difficulties with social functioning, is limited to simple repetitive tasks, and has moderate difficulties with regard to concentration, persistence or pace, the ALJ did not include difficulties with concentration, persistence, and pace in the hypothetical question.

Because a VE provides an opinion as to the claimant's residual functional capacity, the Third Circuit mandates that the hypothetical posed to a VE must include "all of claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be

---

for a clinical drug trial in Lady Lourdes for several weeks, and gets along with people.  (R&R at 17.)

considered substantial evidence." <u>Ramirez v. Barnhart</u>, 372 F.3d 546, 552 (3d Cir. 2004); <u>see also</u> <u>Chrupcala v. Hecker</u>, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing <u>Podedworny v. Harris</u>, 745 F.2d 210 (3d Cir. 1984)).  However, a claimant's statements about his impairments need only be included in the hypothetical if the statements are supported by objective evidence in the record. <u>Hartranft</u>, 181 F.3d at 362.

Here, Plaintiff contends that the hypothetical question posed to the VE was flawed because of the ALJ's failure to include Plaintiff's difficulties with concentration, persistence, and pace.  The following hypothetical question was posed to the VE:

> I want you to assume an individual of the claimant's age, education, and work experience, having the following residual functional capacity: being able to perform at the medium exertional level of activity, but limited to simple, repetitive tasks with only occasional changes in the work setting.  For that individual, return to claimant's past relevant work? (Tr. 187.)

Contrary to Plaintiff's assertion, this hypothetical question adequately captures the ALJ's finding that Plaintiff had moderate limitations in concentration, persistence, and pace. Because the hypothetical question limited Plaintiff to "simple, repetitive tasks," the question was sufficiently descriptive to encompass the finding that Plaintiff had moderate difficulties in "concentration, persistence, and pace." <u>See</u> <u>McDonald v. Astrue</u>, 293 Fed. Appx. 941, 946 (3d Cir. 2008) (holding that hypothetical

question which limited plaintiff to "simple, routine tasks"
adequately captured the ALJ conclusion that Plaintiff was
moderately limited in "concentration, persistence, and pace").

Plaintiff argues that the reference to "simple,
repetitive tasks" is insufficient to convey Plaintiff's moderate
difficulties in "concentration, persistence, and pace," in light
of the Third Circuit's requirement for "great specificity" in
crafting a hypothetical question posed to a VE. Ramirez, 372
F.3d at 554-55. In Ramirez, the Third Circuit held that greater
specificity than a limitation to "one or two step simple tasks"
may be necessary in presenting functional limitations caused by a
mental impairment in a hypothetical to a VE. Id. at 554.

The Third Circuit emphasized that such specificity is
particularly necessary where the record establishes that
plaintiff "often suffers" from deficiencies in concentration,
persistence or pace. Id. However, the Ramirez Court highlighted
that "there may be a valid reason for the omission" of more
specific references in a hypothetical where, for example, "the
ALJ may have concluded" that the deficiencies were "so minimal or
negligible that . . . [the deficiencies] would not limit . . .
[the] ability to perform simple tasks." Id. at 555.
In Ramirez, because the record established that plaintiff often
suffered from mental impairments, the Third Circuit held that the
hypothetical, which did not specifically detail such impairments,

16

was fundamentally flawed.  Id.

Unlike the "often" experienced difficulties by the plaintiff in Ramirez, here, Plaintiff only moderately experiences difficulties in "concentration, persistence, and pace." Moreover, in contrast with the ample objective evidence of the plaintiff's mental impairments in Ramirez, here, as previously established, the record is nearly deplete of objective medical evidence of Plaintiff's mental impairments.

Accordingly, because the record does not suggest that Plaintiff's moderate difficulties in "concentration, persistence, and pace" would limit Plaintiff's ability to perform "simple, repetitive tasks," there was valid justification for the ALJ's omission of more specific references in the hypothetical.  Id. at 555; see also Santiago-Rivera v. Barnhart, No. 05-5698, 2006 U.S. Dist. LEXIS 69559, at *33-34 (E.D. Pa. Sept. 26, 2006) (distinguishing Ramirez where Plaintiff "had not clearly established in the record specific deficiencies so as to require inclusion of those elements in the ALJ's hypothetical").[8]

---

[8]     Plaintiff cites a Seventh Circuit decision where the court held that a hypothetical question posed to a VE which restricted the inquiry to "simple, routine tasks," was insufficient to convey Plaintiff's moderate difficulties in "concentration, persistence, and pace."  Stewart v. Astrue, 561 F.3d 679, 685 (7th Cir. 2009).  Although the Court recognizes that the Seventh Circuit reached the opposite conclusion than the Court does today, given the Third Circuit's guidance in Ramirez, the Court is not persuaded by the Seventh Circuit's approach.

As previously noted, the Ramirez Court suggested that

IV.   CONCLUSION

        For the foregoing reasons, the Court finds that the
ALJ's determination is supported by substantial evidence in the
administrative record.   Accordingly, Plaintiff's objections will
be overruled, the Report and Recommendation will be approved and
adopted, and Plaintiff's motion for summary judgment will be
denied.   An appropriate order follows.

---

greater specificity in a hypothetical question (i.e. specifics
which go beyond limiting the inquiry to simple, repetitive tasks)
may not be necessary where the deficiencies are so minimal that
they would not limit the "ability to perform simple tasks."
Ramirez, 372 F.3d at 555.  Moreover, in a recent unpublished
opinion, the Third Circuit, distinguishing Ramirez, held that an
ALJ's hypothetical which limited the inquiry to "simple, routine
tasks," adequately conveyed the plaintiff's "moderate limitations
with his ability to maintain concentration, persistence, and
pace."  McDonald, 293 Fed. Appx. at 946.  In light of Third
Circuit guidance, the Court declines to follow the Seventh
Circuit's approach.